*246 Young, J.
I. INTRODUCTION
In this life insurance dispute, plaintiffs, Jeffrey Lee Oade and Sheilah Chouinard, seek to recover benefits from a Jackson National Life insurance policy issued and delivered to Gary Oade. Plaintiffs, the son and friend of Mr. Oade, respectively, are the named beneficiaries of the insurance policy. Defendant claims that the policy never became effective because Mr. Oade failed, as required by the terms of the insurance application, to provide updated information about his health and medical treatment between the date he signed the application and the day the policy was issued. We granted leave to address the applicability of the statutory requirement under MCL 500.2218(1), that a misrepresentation in an application of insurance be material in order to make the insurance policy avoidable.
Because Mr. Oade had an explicit, contractual continuing duty to ensure that the answers in his insurance application remained true until the effective date of the policy, we hold that Mr. Oade’s failure to supplement his medical history rendered his original answers false, making them “misrepresentations” within the meaning of MCL 500.2218(2). However, contrary to the Court of Appeals decision, we conclude that these misrepresentations were material, and that defendant was therefore entitled to avoid the contract. Accordingly, we reverse the Court of Appeals decision and reinstate summary disposition in favor of defendant.
*247 H. FACTUAL AND PROCEDURAL BACKGROUND
On November 29, 1993, Mr. Oade, a fifty-three year-old store owner, contacted his insurance agent and completed a Jackson National Life Insurance Company of Michigan application for a “preferred” $100,000 life insurance policy.[1] In order to evaluate the insurance risks posed by an applicant and consistent with standard underwriting procedures, the Jackson National application required answers to certain questions about an applicant’s health status. That application further required that the applicant inform defendant in writing if the applicant’s health or any of the answers or statements contained in the application changed between the time the original answers were given and the date the policy was issued and delivered.[2]
The application contained the following questions relevant to the resolution of this case:
2. Have you ever been treated for, or ever had any indication of:
* * *
*248 d. Chest pain, discomfort or tightness; palpitations, high blood pressure, rheumatic fever, heart murmur, heart attack or other disorder of the heart or blood vessels?
3. Have you, in the past five years:
a. Consulted or been treated by a physician or other medical practitioner?
b. Been a patient in a hospital, clinic, or medical facility?
In answering the application questions, Mr. Oade denied, in response to question 2(d), that he had been treated for chest pain, discomfort or tightness, palpitations, rheumatic fever, heart murmur, heart attack or other disorder of the heart or blood vessels. However, he disclosed that he had been treated for high blood pressure. In response to question 3(a) and (b), he denied that he had been hospitalized but disclosed that he had been treated by a physician or other medical practitioner during the preceding five years. Defendant did not contest the accuracy of the initial answers Mr. Oade made in response to the application.
On December 25, 1993, between the submission of Mr. Oade’s application and defendant’s approval and delivery of the policy, Mr. Oade went to a hospital emergency room, complaining of chest pains. He was admitted to the hospital and stayed overnight while tests were performed. As noted, the application for insurance required Mr. Oade to provide updated health information. In particular, Mr. Oade’s initial answers that he had not been a patient in a hospital in the preceding five years, and had never been treated for chest pains thus became inaccurate information concerning his health status. Despite the requirement to provide updated health information, it is undisputed that Mr. Oade did not inform defendant of his December hospitalization for chest pains.
*249 On January 4, 1994, after evaluating Mr. Oade’s application, defendant approved him for a “standard” policy rather than the “preferred” policy he had originally sought. Oade paid the additional premium on January 6, and the policy was delivered that day.
Mr. Oade died suddenly from a heart attack on September 1, 1994. Plaintiffs submitted a claim to defendant for payment of the death benefits provided in the life insurance policy. Defendant investigated, discovered the undisclosed hospitalization, and denied the claim on the ground that, although required to do so under the terms of the insurance application, Mr. Oade failed to report his change in medical history. Defendant declared that, because Mr. Oade had violated conditions precedent to create insurance coverage, the policy never became effective.
Following defendant’s refusal to pay under the policy, plaintiffs brought this action in the circuit court where both parties filed cross-motions for summary disposition. The circuit court granted summary disposition in favor of defendant, holding that Mr. Oade’s failure to communicate in writing the “material changes” to his answers in the application prevented the policy from taking effect.
The plaintiffs appealed, and the Court of Appeals reversed in an unpublished per curiam decision.[3] The Court of Appeals recognized that parties may mutually agree that certain conditions be met before an insurance contract will become effective. However, the Court reasoned that such contract terms must not conflict with applicable statutes. The Court held that the case was governed by MCL 500.2218(1). It *250 rejected defendant’s argument that the insurer was not claiming misrepresentation permitting rescission of an existing policy, but that the policy never became effective in the first instance.
In applying the statute, the Court of Appeals attempted to determine whether the undisclosed health information was material within the meaning of MCL 500.2218(1). In so doing, the Court relied on Zulcosky v Farm Bureau Life Ins Co of Michigan, 206 Mich App 95; 520 NW2d 366 (1994), for the proposition that a misrepresentation is not material if the insurer would have issued “a” policy, albeit a different one issued at a higher rate.
Applying these principles to the facts of the case, the Court of Appeals concluded that, because plaintiffs had presented the deposition and affidavit of one of defendant’s underwriters indicating that there was a possibility that Mr. Oade would have been offered a policy at a higher rate, plaintiffs had established a genuine issue of fact concerning the materiality of Mr. Oade’s failure to disclose.
This Court granted defendant’s application for leave to appeal.[4]
m. STANDARD OF REVIEW
Issues of statutory interpretation are questions of law and are therefore reviewed de novo. Cardinal Mooney High Sch v Michigan High Sch Athletic Ass’n, 437 Mich 75, 80; 467 NW2d 21 (1991).
A motion for summary disposition under MCR 2.116 (C)(10), which tests the factual support of a *251 claim, is subject to de novo review. Smith v Globe Life Ins Co, 460 Mich 446, 454; 597 NW2d 8 (1999).
IV. ANALYSIS
The Court of Appeals relied on the materiality requirement found in MCL 500.2218(1):
No misrepresentation shall avoid any contract of insurance or defeat recovery thereunder unless the misrepresentation was material. No misrepresentation shall be deemed material unless knowledge by the insurer of the facts misrepresented would have led to a refusal by the insurer to make the contract.
Although we agree with the Court of Appeals that MCL 500.2218 applies to the facts of the instant case, we disagree with its conclusion that Mr. Oade’s misrepresentations were not material.
A. APPLICABILITY OF MCL 500.2218
The touchstone of the statute’s applicability is a “misrepresentation.” MCL 500.2218(2) defines a “misrepresentation” as a “false representation.” A “representation,” in turn, is statutorily defined as a “statement as to past or present fact, made to the insurer by or by the authority of the applicant for insurance or the prospective insured, at or before the making of the insurance contract as an inducement to the making thereof.” MCL 500.2218(2).
When he submitted his insurance application, Mr. Oade indicated on the application that he had not been a patient in a hospital in the preceding five years and that he had never been treated for chest pains. However, between the submission of Mr. Oade’s application and defendant’s approval and *252 delivery of the policy at issue, Mr. Oade was hospitalized for chest pains. It is undisputed that Mr. Oade did not inform defendant of this event.
The question, then, is whether Mr. Oade engaged in a misrepresentation for purposes of MCL 500.2218(2). We conclude that he did. Under the express language of the insurance application, Mr. Oade had a continuing duty to ensure that the answers in his insurance application remained true as of the date he received the policy. In relevant part, the application variously states:
It is represented that the statements and answers given in this application are true, complete, and correctly recorded to the best of my . . . knowledge and belief.
* * *
I understand that no policy based on this application will be effective unless all of my statements and answers continue to be true as of the date I receive the policy. I understand that if my health or any of my answers or statements change prior to delivery of the policy, I must so inform the company in writing.
* * :|:
I understand that my statements and answers in this application must continue to be true as of the date I receive the policy I understand that if my health or any of my answers or statements change prior to delivery of the policy, I must so inform the Company in writing.
likewise, the interim insurance receipt provides as follows:
[N]o policy will go into force unless all my statements and answers in this application continue to be true as of the date I receive the policy:
*253 If my health or any of my answers or statements given in this or any other supplement to this application change prior to delivery of the policy, I must so inform the Company in writing ....
Despite contractually promising that his answers would “continue to be true” as of the effective date of the policy, Mr. Oade failed to do so. This failure rendered Mr. Oade’s previous answers false, thereby making them misrepresentations under MCL 500.2218(2).
Having determined that the statute applies, we turn to the Court of Appeals decision that Mr. Oade’s misrepresentations were not material and that defendant therefore could not avoid the insurance contract.
B. MATERIALITY REQUIREMENT
MCL 500.2218(1) provides:
No misrepresentation shall avoid any contract of insurance or defeat recovery thereunder unless the misrepresentation was material. No misrepresentation shall be deemed material unless knowledge by the insurer of the facts misrepresented would have led to a refusal by the insurer to make the contract.
The Court of Appeals relied on its prior decision in Zulcosky v Farm Bureau Life Ins Co, supra, for the proposition that a change in facts is “material” only where the correct information would cause the insurer to reject the applicant altogether. Zulcosky would not find materiality where the correct information would merely prompt the insurer to offer a policy at a higher premium. However, this is contrary to the binding precedent of this Court. Our decision in Keys v Pace, 358 Mich 74, 82; 99 NW2d 547 (1959), made clear that a fact or representation in an applica *254 tion is “material” where communication of it would have had the effect of “substantially increasing the chances of loss insured against so as to bring about a rejection of the risk or the charging of an increased premium.” Keys, in turn, is consistent with the plain language of MCL 500.2218(1), which defines materiality in terms of the insurer’s refusal “to make the contract” (emphasis added), not “a” contract.
In this case, the undisputed evidence presented to the trial court made clear that the correct information would have led the insurer to charge an increased premium, hence a different contract. Indeed, defendant’s underwriter stated in her affidavit that defendant “may have been willing to offer a more expensive ‘rated’ insurance contract at approximately double the premium cost that Mr. Oade had paid for the ‘standard’ insurance policy in this instance.” Thus, the Court of Appeals erred in focusing on whether defendant would have issued any contract of insurance to Mr. Oade. The proper materiality question under the statute is whether “the” contract issued, at the specific premium rate agreed upon, would have been issued notwithstanding the misrepresented facts. The Court of Appeals contrary decision in Zulcosky is overruled.
Because there is no genuine issue of material fact on the issue of materiality, defendant is entitled to summary disposition under MCR 2.116(C)(10).
V. RESPONSE TO THE DISSENT
Contrary to the dissent, we conclude that it is altogether irrelevant that plaintiff’s health did not change during the prepolicy period. The dissent, in concluding that the case presents a question of material fact, asserts that plaintiff offered evidence that he had not *255 suffered a heart attack. It further asserts that plaintiff’s personal physician affirmed that decedent’s health “did not change in anyway [sic]” between the date he applied for the insurance policy and when it was delivered. Post at 262. On the basis of this evidence, the dissent concludes that “the fact issue concerning the materiality of decedent’s misrepresentations should be resolved by the trier of fact.” Post at 266.
However, the focus of inquiry under the statutory “materiality” test is whether a reasonable underwriter would have regarded Mr. Oade’s updated answers regarding his hospitalization for chest pains as sufficient grounds for rejecting the risk or charging an increased premium, not whether the status of Mr. Oade’s health had changed. Because there is no dispute that defendant would have, at minimum, issued an insurance policy at a higher premium rate, no reasonable jury could conclude that it would have issued the same contract.
To create an issue of fact on the materiality question, plaintiffs were free to bring forth evidence drawing into question the testimony of defendant’s underwriter. Because plaintiffs did not do so, the trial court properly granted summary disposition to defendant under MCR 2.116(C)(10).
VI. CONCLUSION
While we agree with the Court of Appeals that MCL 500.2218 applies here, we conclude that Mr. Oade’s misrepresentations were material, thereby entitling defendant to avoid the insurance contract. Accordingly, we reverse the Court of Appeals decision and reinstate summary disposition in favor of defendant.
*256 Corrigan, C.J., and Weaver, Taylor, and Markman, JJ., concurred with Young, J.

 Mr. Oade applied for a “preferred” life insurance policy. After evaluating Mr. Oade’s medical history, Mr. Oade was finally approved for a “standard” policy which was more expensive than the “preferred” policy. Though both parties neglect to provide an explanation of the difference between the two policies, it appears that a “preferred” policy is issued to applicants who are in “better” health.

 The interim insurance receipt is another document that Mr. Oade signed. The language on the interim insurance receipt provided:
I . . . understand and agree that:
1. no policy will go into force unless all my statements and answers in this application continue to be true as of the date I receive the policy:
2. if my health or any of my answers or statements given in this or any other supplement to this application change prior to delivery of the policy, I must so inform the Company in writing ....

 Unpublished opinion per curiam, issued February 26, 1999 (Docket No. 202501).

 463 Mich 864 (2000).